Nathaniel Clark, Esq. (SBN 276621)
LAW OFFICES OF SCOTT WARMUTH, APC
17700 Castleton Street, Suite # 168
City of Industry, California 91748
Telephone: (626) 363-2150
Facsimile:  (626) 642-0808
nclark@law888.com

ATTORNEYS FOR PLAINTIFF MEI MA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEI MA, an individual,<br><br>               Plaintiff,<br><br>     vs.<br><br>CONVERGENT OUTSOURCING, INC., a Washington corporation; and DOES 1-10,<br><br>               Defendants. | CASE NO. 2:16-cv-4558-JAK-AGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

///
///
///
///
///
///

## TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................. 1

II.    STANDARD........................................................................................ 3

III.   FACTS .............................................................................................. 4

IV.   ARGUMENT .................................................................................... 5

       A.    Ma Has Alleged Concrete and Particularized Injuries ................................. 5

       B.    Convergent Further Caused Traditional harm to Ma Recognized at Common Law .......................................................................... 8

       C.    Convergent Misapplies *Spokeo* .......................................... ……....11

       D.    Convergent's Attempt to Distinguish *Van Patten* Falls Short.................... 14

       E.    *Romero* Is Flawed And Has Been Rejected in the Central District ............ 16

       F.    Defendant's Motion Should Be Denied Because Defendant's Exact Conduct Constitutes a Rosenthal Act Violation, For Which There Is Standing ........ 18

V.    CONCLUSION................................................................................ 19

# TABLE OF AUTHORITIES

## U.S. Supreme Court

Babbitt v. UFW Nat'l Union 442 U.S. 289 (1979)………………………………………3

Baker v. Carr 369 U.S. 186 (1962)…………………………………………………………3, 6

Campbell-Edwald Co. v. Gomez 136 S. Ct. 663 (2016)………………………………… 1

Harper v. Virginia Bd. of Elections 383 U.S. 663 (1966)……………………………6

Havens Realty Corp. v. Coleman 455 U. S. 363 (1982)……………………………13, 14

Horne v. Flores 557 U.S. 433 (2009)……………………………………………………4

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc. 528 U.S. 167 (2000)………5

Linda R. S. v. Richard D. 410 U.S. 614 (1973)…………………………………………13

Lujan v. Defenders of Wildlife 504 U.S. 555 (1992)……………………………3, 11, 14-15

Massachusetts v. EPA 549 U.S. 497 (2007)……………………………………………3

McGowan v. Maryland 366 U.S. 420 (1961)……………………………………………6

Mims v. Arrow Fin. Servs., LLC 132 S. Ct. 740 (2012)……………………………1, 2, 7, 14

Schleisinger v. Reservists Comm. to Stop the War 418 U.S. 208 (1974)…………………2

Sierra Club v. Morton 405 U.S. 727 (1972)……………………………………………13

Spokeo, Inc. v. Robins 136 S. Ct. 1540 (2016)…………………………………………*passim*

Tennessee Elec. Power Co. v. TVA 306 U. S. 118 (1939)………………………………13

Trafficante v. Metropolitan Life Ins. Co. 409 U.S. 205 (1972)………………………13

Turner Broad. Sys., Inc. v. F.C.C. 512 U.S. 622 (1994)………………………………11

United States v. Students Challenging Reg. Agency Procs., 412 U.S. 669 (1973)…………6

Walters v. Nat'l Ass'n of Radiation Survivors 473 U.S. 305 (1985)……………………11

Warth v. Seldin 422 U.S. 490 (1975)……………………………………………………13

## Federal Courts

Abante Rooter & Plumbing v. Pivotal Payments, Inc.

U.S. Dist. LEXIS 26457 (N.D. Cal. Feb. 24, 2017)……………………………………16

Am. Online, Inc. v. IMS 24 F. Supp. 2d 548 (E.D. Va. 1998).................................9

Am. States Ins. Co. v. Capital Assocs. 392 F.3d 939 (7th Cir. 2004)..........................10

Anderson v. AFNI, Inc. 10-cv-4064
U.S. Dist. LEXIS 51368 (E.D. Pa. May 11, 2011)........................................3

Booth v. Appstack, Inc. U.S. Dist. LEXIS 68886 (W.D. Wash. May 24, 2016)...........2, 11

Boise v. ACE USA, Inc. 15-cv-21264
U.S. Dist. LEXIS 87200 (S.D. Fla. July 6, 2015)..................................9, 14

Charvat v. NMP, L.L.C., 656 F.3d 440 (6th Cir. 2011)..................................8

CompuServe, Inc. v. Cyber Promotions, Inc. 962 F. Supp. 1015 (S.D. Ohio 1997).........10

Cuellar-Aguilar v. Deggeller Attractions, Inc. 812 F.3d 614 (8th Cir. 2015)..................6

Czech v. Wall St. on Demand 674 F. Supp. 2d 1102 (D. Minn. 2009)..........................9

De Los Santos v. Millward Brown, Inc. 13-80670-cv
U.S. Dist. LEXIS 88711 (S.D. Fla. June 29, 2014)........................................2

Ewing v. SQM US Inc. 16-cv-1609 (S.D. Cal. June 23, 2016)...................................17

Haysbert v. Navient Solutions, Inc.
U.S. Dist. LEXIS 30720 (C.D. Cal. Mar. 8, 2016).......................15-16, 18-19

Ikuseghan v. Multicare Health Sys. 14-cv-5539
U.S. Dist. LEXIS 99175 (W.D. Wash. July 29, 2015).......................................2

Leung v. XPO Logistics, Inc. 15-cv-3877
U.S. Dist. LEXIS 176820 (N.D. Ill. Dec. 9, 2015)......................................11

LaVigne v. First Cmty. Bancshares, Inc. 15-CV-00934
WL 6305992 (D.N.M. Oct. 19, 2016)....................................................17

Martin v. Leading Edge Recovery Solutions, LLC 11-cv-5886
U.S. Dist. LEXIS 112795 (N.D. Ill. Aug. 10, 2012).................................2, 6, 11

Messerlian v. Rentokil N. Am., Inc.
U.S. Dist. LEXIS 175224 (C.D. Cal. Dec. 15, 2016).....................................16

Mey v. Got Warranty, Inc. 15-cv-101

U.S. Dist. LEXIS 84972 (N.D. W.V. June 30, 2016)……………………………....1, 7, 8, 10

Microsoft Corp. v. Does 1–18

U.S. Dist. LEXIS 46951 (E.D. Va. Jan. 6, 2014)…………………………………………9

Mohamed v. Off Lease Only, No. 15-CV-23352-MGC (March 22, 2017)……………....1, 18

Nghiem v. Dick's Sporting Goods, Inc.

U.S. Dist. LEXIS 183671 (C.D. Cal. Dec. 1, 2016)……………………………………..16

Owens Ins. Co. v. European Auto Works, Inc., 695 F.3d 814 (8th Cir. 2012)……………8

Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,

781 F.3d 1245 (11th Cir. 2015)…………………………………..…………………....2, 7, 10

Rex v. Chase Home Fin. LLC 905 F. Supp. 2d 1111 (C.D. Cal. 2012)………………………11

Robinson v. Managed Accounts Receivable Corp.

654 F. Supp. 2d 1051 (C.D. Cal. 2009)……………………………………………………18

Rogers v. Capital One Bank (USA), N.A. 15-cv-4016

U.S. Dist. LEXIS 73605 (N.D. Ga. June 3, 2016)………………………………………2, 14

Romero v. Dept. Stores Nat'l Bank 15-CV-193-CAB-MDD

U.S. Dist. LEXIS 110889 (S.D. Cal. Aug. 5, 2016)………………………………………16-18

Schumacher v. Credit Prot. Ass'n 13-cv-164

U.S. Dist. LEXIS 132752 (S.D. Ind. Sept. 30, 2015)……………………………………2

Sierra Club v. U.S. Army Corp. of Eng'rs 645 F.3d 978 (8th Cir. 2011)………………………5

Smith v. Blue Shield of Cal. Life & Health Ins. Co.

U.S. Dist. LEXIS 5620 (C.D. Cal. Jan. 13, 2017)………………………………………16

Stoops v. Wells Fargo Bank, N.A. 15-cv-83

U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016)……………………………………2

St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp. – Texas

249 F.3d 389 (5th Cir. 2001)……………………………………………………………8

Tirabassi v. Chase Home Fin., LLC 14-cv-08790

U.S. Dist. LEXIS 43730 (C.D. Cal. Mar. 24, 2015)……………………………………18

Van Patten v. Vertical Fitness Grp., LLC No. 14-55980

2017 U.S. App. LEXIS 1591 (9th Circ. Jan. 30, 2017)…………………………14-15, 17

Walker v. City of Lakewood 272 F.3d 1114 (9th Cir. 2001)……………………………11

Wallace v. Enhanced Recovery Co., LLC 13-cv-124

U.S. Dist. LEXIS 123676 (E.D. N.C. Sept. 16, 2015)……………………………………8


**State Courts**

Amos Fin., L.L.C. v. H & B & T Corp.

2015 N.Y. Misc. LEXIS 2254 (N.Y. Sup. Ct. June 29, 2015)………………………………9


**Federal Codes**

15 U.S.C. §1681e……………………………………………………………………………12

15 U.S.C. §§ 1692……………………………………………………………………………18

47 U.S.C. §227………………………………………………………………………………3, 15


**California Codes**

Cal. Civ. Code § 1788.17…………………………………………………………………… 18


**Secondary Authority**

3 *W. Blackstone, Commentaries*………………………………………………………12

Davis, Administrative Law Treatise §§ 22.09-5, 22.09-6 (Supp. 1970)………………6

Davis, Standing: Taxpayers and Others 35 U. Chi. L. Rev. 601……………………6

Eli A. Meltz, No Harm, No Foul? "Attempted" Invasion of Privacy

and the Tort of Intrusion Upon Seclusion 83 Fordham L. Rev. 3431 (May 2015)…………8

Restat. 2d of Torts §217 (1965)…………………………………………………………9

Restat. 2d of Torts §218, cmt. d (1965)..................................................9

Restat. 2d of Torts §652A(1) (1977)....................................................8

## I.   INTRODUCTION

For starters, Defendant Convergent Outsourcing, Inc. ("Convergent"), ignores what the Supreme Court said just in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), which ruled the plaintiff's TCPA claim was not moot. In reaching this conclusion, the plaintiff's Article III standing was plainly on the Justices' minds (having heard argument in *Spokeo*) because Chief Justice Roberts went out of his way to note that the plaintiff's receipt of unwanted telephone calls is an "injury in fact." *See Id.* at 679 (Roberts, C.J., dissenting) ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation. In his complaint, Gomez alleged that he suffered an injury in fact when he received unauthorized text messages from Campbell. To remedy that injury, he requested $1500 in statutory damages for each unauthorized text message.").

Convergent also fails to appreciate that despite the federal courts' obligation to *sua sponte* raise and decide any issue about their subject matter jurisdiction, including standing, *Campbell-Ewald* is the second time in recent years that the Supreme Court has rejected a challenge to subject matter jurisdiction in a TCPA case, and in both cases the Court did not express any doubt that the recipient of unwanted calls has standing.[1] The lower courts reflect this trend, including cases decided post-*Spokeo*, as they routinely find the injury-in-fact requirement met in TCPA cases.[2]

---

[1] The first decision from the Supreme Court recognizing federal jurisdiction to hear TCPA claims is *Mims v. Arrow Fin. Servs., LLC* which, __like here__, involved debt collection calls and found that there is federal question jurisdiction over TCPA claims. *See* 132 S. Ct. 740, 751 (2012) (in creating the TCPA, "[Congress] enacted detailed, uniform, federal substantive prescriptions ….")

[2] *See, e.g., Mohamed v. Off Lease Only, Inc.*; *Mey v. Got Warranty, Inc.*, 15-cv-101, 2016 U.S. Dist. LEXIS 84972 at *4-*24 (N.D. W.V. June 30, 2016);

This case should reach the same outcome because the TCPA exists to prevent invasions of privacy, aggravation and other harms caused by unsolicited communications (*see Mims, LLC*, 132 S.Ct. at 744 ("[t]he Act bans certain practices invasive of privacy…."), and these are some of the exact harms Convergent inflicted on Ms. Ma. They called her over 74 times (*Complaint* ¶¶ 22-28) about a debt they knew she did not owe, and kept calling her "despite the identification of Plaintiff's name in her voice message answering playback". *Id.* ¶ 4. The constant collection calls not only interfered with Ms. Ma at work, and wasted her time, but further caused undue emotional distress because Ms. Ma feared that Convergent might take legal action against her. *Id.* ¶ 20. These repeated intrusions easily clear the low "concrete injury" threshold set by long-standing Supreme Court precedent, which dates back nearly half a century to *Schleisinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974), and now includes the Supreme

---

*Rogers v. Capital One Bank* (USA), N.A., 15-cv-4016, 2016 U.S. Dist. LEXIS 73605 at *3-*5 (N.D. Ga. June 3, 2016); *Booth v. Appstack, Inc.*, 2016 U.S. Dist. LEXIS 68886 at *15-*17 (W.D. Wash. May 24, 2016); *see also Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015); *Schumacher v. Credit Prot. Ass'n*, 13-cv-164, 2015 U.S. Dist. LEXIS 132752 at *14 (S.D. Ind. Sept. 30, 2015); *Ikuseghan v. Multicare Health Sys.*, 14-cv-5539, 2015 U.S. Dist. LEXIS 99175 at *5-*6 (W.D. Wash. July 29, 2015); *De Los Santos v. Millward Brown, Inc.*, 13-80670-cv, 2014 U.S. Dist. LEXIS 88711 at *8 (S.D. Fla. June 29, 2014); *Anderson v. AFNI, Inc.*, 10-cv-4064, 2011 U.S. Dist. LEXIS 51368 at *16 (E.D. Pa. May 11, 2011); *Martin v. Leading Edge Recovery Solutions, LLC*, 11-cv-5886, 2012 U.S. Dist. LEXIS 112795 at *10-*11 (N.D. Ill. Aug. 10, 2012). One post-*Spokeo* case dismissed for lack of standing, but it is readily distinguishable because the plaintiff manufactured her claims by buying and using multiple cell phones for the purpose of inviting TCPA violations. *See Stoops v. Wells Fargo Bank*, N.A., 15-cv-83, 2016 U.S. Dist. LEXIS 82380 at *37 (W.D. Pa. June 24, 2016) ("a plaintiff 'cannot manufacture standing …'") (citation omitted).

Court's most recent decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1545 (2016).

## II.   STANDARD

Standing requires proof of three elements: (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision. *See Spokeo*, 136 S.Ct. at 1547, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In evaluating whether these elements are met, it must be kept in mind that "standing" is not an arbitrary limitation on jurisdiction, but rather one whose purpose is to ensure the court's resources are brought to bear on a real controversy asserted by a genuinely interested party with something to gain. At bottom, "the gist of the question of standing" is whether petitioners have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007), *quoting Baker v. Carr*, 369 U.S. 186, 204 (1962). In other words, "[t]he basic inquiry is whether the conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) (citations omitted).

As demonstrated below, Ms. Ma's claim squarely meets these concerns. She alleges a real (not hypothetical or abstract) violation of the TCPA that is particularized to her because it arises from repeated, unwanted phone calls Convergent made to her cell phone. If Ms. Ma proves her claim, she is entitled to recover (and Convergent is obligated to pay) statutory damages of at least $500 per violation. 47 U.S.C. §227(b)(3). Accordingly, Ms. Ma has the

requisite personal stake, and thus standing. *See Horne v. Flores*, 557 U.S. 433, 445 (2009) ("Here, as in all standing inquiries, *the critical question* is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'") (italics added, citations omitted).

III.   FACTS

Convergent intentionally caused an automatic dialer to dial Plaintiff's cellular phone line over 74 times. *Complaint* ¶¶ 1, 22-28. Convergent made these calls without Plaintiff's consent. *Id.* ¶ 1. Plaintiff's number was registered on the national do-not-call list, and her voice message identified herself as Mei Ma, so Convergent knew, or should have known, that Convergent was calling Ms. Ma without her consent. *Id.* ¶¶ 4, 16. The phone calls clearly caused an "invasion of privacy, intrusion of daily affairs, and undue annoyance". *Id.* ¶ 36.

The phone calls occurred "while Plaintiff was working, which wasted Plaintiff's time and caused annoyance, stress, and distraction." *Id.* ¶ 18. And because these were collection calls, Convergent "caused harm to Plaintiff by causing emotional distress from the fear of being sued or otherwise harassed by the constant collection calls." *Id.* ¶ 20. Convergent's debt collection calls were for a debt that Ms. Ma <u>did not owe</u>. *Id.* ¶ 2. Moreover, Convergent "failed to properly identify" itself when it called Ms. Ma, and "failed to provide any reasonable method of 'opting out' or instructing Defendant to no longer call Plaintiff." *Id.* ¶ 19, 21.

Accordingly, Ms. Ma seeks statutory plus actual damages under the TCPA according to proof. *Complaint*, Prayer at ¶ V. It will be up to the jury to decide how to exactly quantify the damages for the invasion of privacy, intrusion of her phone and daily affairs, undue annoyance, stress,

distraction, waste of time, and emotional distress due to the fear of being subjected to a lawsuit or other collection efforts.

## IV.   ARGUMENT

### A. Ma Has Alleged Concrete and Particularized Injuries

Convergent cites *Spokeo* to argue its calls to Ms. Ma did not cause any Article III "injury," but *Spokeo* did not decide if the injury requirement was met in that case. It only concluded the Ninth Circuit's analysis was incomplete, and remanded for further consideration. *Spokeo*, 136 S.Ct. at 1545. Instead, *Spokeo* reiterates a variety of long-standing "general principles" governing the injury requirement, in particular the rule that the injury need only be "concrete and particularized." S*pokeo*, 136 S.Ct. at 1545, *citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Convergent does not dispute that Ms. Ma asserts a "particularized" injury, i.e., that its calls to her affected her "in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. Convergent only disputes whether she alleges an injury that is "concrete." *See, Motion* at p. 2, ln., 2-3. An injury is concrete when it is real or *de facto*, i.e., not abstract. *Spokeo*, 136 S.Ct. at 1548. However, it need not be substantial. *Sierra Club v. U.S. Army Corp. of Eng'rs*, 645 F.3d 978, 988 (8th Cir. 2011) ("Injury in fact necessary for standing 'need not be large[;] an identifiable trifle will suffice.'") (citation omitted).

As the Supreme Court explains: "[i]njury in fact reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote,

1    *see Baker v. Carr*, 369 U.S. 186; a $ 5 fine and costs*, see McGowan v.*
2    *Maryland*, 366 U.S. 420; and a $ 1.50 poll tax, *Harper v. Virginia Bd. of*
3    *Elections*, 383 U.S. 663 . . .

4        As Professor Davis has put it: 'The basic idea that comes out in
5    numerous cases is that an identifiable trifle is enough for standing to fight
6    out a question of principle; the trifle is the basis for standing and the
7    principle supplies the motivation.' *Davis, Standing: Taxpayers and Others*,
8    35 U. Chi. L. Rev. 601, 613. *See also K. Davis, Administrative Law Treatise*
9    §§ 22.09-5, 22.09-6 (Supp. 1970)." *United States v. Students Challenging*
10   *Reg. Agency Procs.*, 412 U.S. 669, 689, fn.14 (1973); *see also Palm Beach Golf*
11   *Ctr.-Boca*, 781 F.3d at 1251 (TCPA plaintiff suffered a concrete injury
12   because his fax line was tied up for "one minute.").

13       Concrete also does not mean monetary or economic. *See, e.g., Id.*, and
14   *Students Challenging Reg. Agency Procs.*, 412 U.S. at 689, n.14; *see also*
15   *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620-21 (8th Cir.
16   2015) ("plaintiffs who fail to allege actual damages nonetheless satisfy both
17   the injury in fact and redressability requirements of Article III standing by
18   suing for statutory damages."); *Martin*, 2012 U.S. Dist. LEXIS 112795 at *13
19   (TCPA case, noting "Defendants have cited no case holding that monetary
20   loss or emotional distress is a prerequisite for Article III standing.").

21       To the contrary, *Spokeo* confirms that the required injury can be
22   intangible and amount to nothing more than a "risk" of real harm. *Spokeo*,
23   136 S.Ct. at 1549. For example, an intangible harm is concrete if it has a
24   "close relationship to a harm" that provided a basis for a lawsuit at common
25   law, or if it is a harm identified by Congress:

26       "In determining whether an intangible harm constitutes injury in fact,
27   both history and the judgment of Congress play important roles. Because the
28   doctrine of standing derives from the case-or-controversy requirement, and

because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. [citation omitted]. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* at 1549.

In fact, *Spokeo* goes even further, recognizing that the alleged violation of the statute itself can supply the requisite injury. *Id.* at 1544 (the violation of a "right granted by statute can be sufficient in some circumstances to constitute injury in fact.")

Under these well-established principles, Convergent's repeated, intrusive calls to Ms. Ma caused her concrete harm in multiple ways. *First*, the calls invaded her privacy. *Second*, the calls intruded upon and occupied Ms. Ma's cellular telephone line and voicemail. *Third*, the calls wasted her time. *Fourth*, the calls caused emotional distress and fear of legal process as the repeated calls were for the purpose of collecting a debt. *Fifth*, the calls caused undue annoyance and stress as the calls occurred while she was at work. *Mey v. Got Warranty, Inc.*, 2016 U.S. Dist. LEXIS 84972 at *8 (N.D. W.V. June 30, 2016) ("The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time…"). *Finally*, Convergent's calls to Ms. Ma violated her substantive rights under the TCPA.

For example, Convergent's invasion of Ms. Ma's privacy is a concrete injury because it is recognized by Congress as one of the harms the TCPA was created to prevent. As the Supreme Court and Eighth Circuit note, "[t]he Act bans certain practices invasive of privacy…." *Mims*, 132 S.Ct. at

744; *and see Owens Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819 (8th Cir. 2012) ("the ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA."). Thus, as further explained below, Ms. Ma, easily meets Article III's injury requirement.

### B. Convergent Further Caused Traditional Harm to Ma Recognized at Common Law

In addition to the harm caused by violating Ms. Ma's rights under the TCPA, Convergent's calls also caused her traditional harms long recognized at common law. The first such harm is the invasion of her privacy. *Mey*, *supra,* at \*8-\*13. This is a concrete injury because beyond bearing a "close relationship to harm that has traditionally been regarded as providing a basis for a lawsuit" (*Spokeo*, 136 S.Ct. at 1549), it is itself an independently actionable harm. *See Restat. 2d of Torts*, §652A(1) (1977) ("[o]ne who invades the right of privacy of another is subject to liability ...."); *Eli A. Meltz, No Harm, No Foul? "Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) ("the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute"). Indeed, courts have found that an invasion of privacy can arise from unwanted telephone calls. *See, e.g., Charvat v. NMP, L.L.C.*, 656 F.3d 440, 452–454 (6th Cir. 2011); *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp. - Texas*, 249 F.3d 389, 394 (5th Cir. 2001).

Convergent caused further harm to Ms. Ma by the intruding upon her cellular telephone line usage by calling her 74 times. *See Mey*, 2016 U.S. Dist. LEXIS 84972 at \*13; *see also Boise v. ACE USA, Inc.*, 15-cv-21264, 2015 U.S. Dist. LEXIS 87200 at \*8 (S.D. Fla. July 6, 2015); *Wallace v. Enhanced Recovery Co., LLC*, 13-cv-124, 2015 U.S. Dist. LEXIS 123676 at

*12 (E.D. N.C. Sept. 16, 2015). Like invasion of privacy, this is a standalone harm independent of the violation of Ms. Ma's TCPA rights, plus it bears a close relationship to harm that has traditionally been regarded as providing a basis for a lawsuit, because it is akin to the common law claim of trespass to chattel -- the intentional dispossession of another's chattel, or the use of or intermeddling with a chattel in possession of another. *See Restat. 2d of Torts* §217 (1965).

Courts have traditionally recognized an action for trespass to chattel based on the temporary dispossession of personal objects, even though "there has been no impairment of the condition, quality, or value of the chattel, and no other harm to any interest of the possessor," and even though the plaintiff "is not deprived of the use of the chattel for any substantial length of time." *Restat. 2d of Torts* §218, cmt. d (1965). This is similar to a trespass to land, which requires nothing more than "plac[ing a] foot on another's property." *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring).

Courts recognize that the temporary electronic intrusion upon another person's equipment, including their cell phone, is enough to constitute a trespass to chattel. *See Czech v. Wall St. on Demand*, 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to foreclose cell phone owner's trespass to chattel claim against sender of unwanted text messages); *Amos Fin., L.L.C. v. H & B & T Corp.*, 2015 N.Y. Misc. LEXIS 2254 at *21 (N.Y. Sup. Ct. June 29, 2015) (occupying memory of answering machine and interfering with unencumbered access to phone can be trespass to chattel); *Microsoft Corp. v. Does* 1–18, 2014 U.S. Dist. LEXIS 46951 at *24 (E.D. Va. Jan. 6, 2014) ("The unauthorized intrusion into an individual's computer system through … unwanted communications supports [a claim for trespass to chattels].") (R&R adopted Apr. 2, 2014); *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550-51 (E.D. Va. 1998) (granting summary judgment against email spammer

1  for trespass to chattel); *CompuServe, Inc. v. Cyber Promotions, Inc.*, 962 F.

2  Supp. 1015, 1022 (S.D. Ohio 1997) (issuing preliminary injunction against

3  email spammer based on trespass to chattel).

4      Moreover, this is another harm recognized by Congress because the

5  TCPA's purposes include "keep[ing] telephone lines from being tied up…"

6  *Am. States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004).

7  Indeed, the Eleventh Circuit held in a TCPA case that the brief "occupation

8  of the recipient's telephone line and fax machine" met the injury

9  requirement. *Palm Beach Golf Ctr.-Boca*, 781 F.3d at 1250. Accordingly,

10  Convergent's repeated and unwanted intrusion upon Ms. Ma's cell phone

11  further demonstrates that Ms. Ma meets the injury requirement.

12      Convergent also wasted Ms. Ma's time and repeatedly called her when

13  she was at work. *Mey*, 2016 U.S. Dist. LEXIS 84972 at *16. Even worse,

14  Convergent forced Ms. Ma to incur repeated unwanted calls about a debt

15  owed by someone else, which caused emotional distress due to fear of legal

16  process. These are other standalone harms independent of the violation of

17  Ms. Ma's rights, as the first post-*Spokeo* case to address whether an asserted

18  TCPA violation meets the injury requirement answered "yes" in no small

19  measure based on the waste of the plaintiff's time:

20      "Here, the court is satisfied that Plaintiffs' allegations
        demonstrate "concrete injury" as elucidated in *Spokeo*. In
21      *Spokeo*, the "injury" Plaintiffs incurred was arguably merely
        procedural and thus non-concrete. In contrast, the
22      TCPA…violations alleged here, if proven, required Plaintiffs to
        waste time answering or otherwise addressing widespread
23      robocalls. The use of the autodialer, which allegedly enabled
        Defendants to make massive amounts of calls at low cost and in
24      a short period of time, amplifies the severity of this injury. As
25      Congress and Washington State's legislature agreed, such an
        injury is sufficiently concrete to confer standing."
26

27

28

*Booth v. Appstack, Inc.*, 2016 U.S. Dist. LEXIS 68886 at *17 (W.D. Wash. May 24, 2016).

 *Booth* is consistent with pre-*Spokeo* decisions that also recognize that lost time caused by unwanted telephone calls is a concrete injury. *See Leung v. XPO Logistics, Inc.*, 15-cv-3877, 2015 U.S. Dist. LEXIS 176820 at *9-*10 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough."); *Martin*, 2012 U.S. Dist. LEXIS 112795 at *11 (plaintiffs "directly injured" in part "because they had to spend time tending to unwanted calls…"); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1146 (C.D. Cal. 2012) ("a plaintiff suffers an injury sufficient to establish Article III 'standing' where she alleges that she 'lost . . . time spent responding to the' defendant's wrongful conduct and the lost time is 'at least indirectly attributable to the [defendant's] actions.'*), quoting Walker v. City of Lakewood*, 272 F.3d 1114, 1124-25 (9th Cir. 2001). For this additional reason, Convergent's unwanted calls to Ms. Ma meet the injury requirement.

## C. Convergent Misapplies *Spokeo*

 Convergent's collective violations of Ms. Ma's rights under the TCPA is itself a concrete injury. *Spokeo* reaffirms that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992); *see also Rogers*, 2016 U.S. Dist. LEXIS 73605 at *4 ("Congress may, by statute, transform a previously non-concrete injury into one that is concrete and therefore sufficient to confer standing."), *citing Spokeo* at 1549.[3]

---

[3] Congress has the power to define injuries because "Congress is far better equipped than the judiciary to 'amass and evaluate the vast amount of data' bearing upon" legislative questions. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665 (1994) (citation omitted); *see also Walters v. Nat'l Ass'n of*

Moreover, in evaluating the procedural requirements of the Fair Credit Reporting Act, *Spokeo* noted that an alleged violation of a procedural right, by itself, may or may not meet the injury requirement, depending on the circumstances. *Spokeo*, 136 S.Ct. at 1544 ("the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified."). The Court limited its comments to procedural rights because the case before it presented an alleged violation of procedural rights under the Fair Credit Reporting Act. *See Spokeo*, 136 S.Ct. at 1545, *citing, inter alia*, 15 U.S.C. §1681e ("Compliance Procedures").

Accordingly, the *Spokeo* majority did not discuss violations of substantive rights, but Justice Thomas's concurrence fills this gap, confirming that in the context of substantive or "private" rights, the violation alone is enough to meet the concrete injury requirement:

> "Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 *W. Blackstone, Commentaries* *2 (hereinafter Blackstone). .... In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy. . .

*Radiation Survivors*, 473 U.S. 305, 330 n.12 (1985) ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference…").

> A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. *See Havens Realty Corp. v. Coleman*, 455 U. S. 363, 373–374, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co. v. TVA*, 306 U. S. 118, 137–138, 59 S. Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege")."

*Spokeo*, 136 S.Ct. at 1551 and 1553 (Thomas, J., concurring).

The *Havens Realty* case Justice Thomas cites is particularly instructive. In it, a unanimous Supreme Court ruled that the violation of the plaintiff's statutory right not to be lied to about available housing met the "injury in fact" requirement even if the plaintiff had no intention of doing business with the defendant, and interacted with the defendant fully expecting it to violate her rights:

> "As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, *supra*, at 500, *quoting Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). *Accord, Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)."

*Havens Realty Corp.*, 455 U.S. at 373-74 (emphasis added).

Needless to say, a person who interacts with a firm having no intention of doing business with it, and expecting the firm to lie, suffers no harm beyond the statutory violation. Nevertheless, in the context of substantive rights, the Court ruled nothing more is required to meet Article III. *See Havens Realty Corp.*, 455 U.S. at 373-74.[4]

Unlike the procedural requirements at issue in *Spokeo*, Ms. Ma's rights under the TCPA are substantive. *See Mims*, 132 S.Ct. at 751 ("[Congress] enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency. *See* 47 U.S.C. §227.") (italics added). Accordingly, Convergent's alleged violation of those rights is itself a concrete injury. *See Spokeo*, 136 S.Ct. at 1549 ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."), *quoting Lujan*, 504 U.S. at 580; *see also Rogers*, 2016 U.S. Dist. LEXIS 73605 at *4 ("a violation of the TCPA is a concrete injury.") and *Boise*, 2015 U.S. Dist. LEXIS 87200 at *8 ("an invasion of any statutory right established by the TCPA is itself a concrete harm."). For this additional reason, Ms. Ma meets the injury requirement.

### D. Convergent's Attempt to Distinguish *Van Patten* Falls Short

Convergent knows quite well that **the Ninth Circuit has already rejected a post-**Spokeo **standing challenge** in *Van Patten v. Vertical Fitness Grp., LLC,* No. 14-55980, 2017 U.S. App. LEXIS 1591 (9th Circ. Jan. 30,

---

[4] No subsequent Supreme Court case questions or limits *Havens Realty*. To the contrary, later Supreme Court authority is consistent with it. In *Lujan v. Defenders of Wildlife*, cited by *Spokeo*, the Supreme Court expressly describes the required "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized [citations] and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (italics added, citations omitted).

2017), in which the court found that the plaintiff had established a concrete injury as a result of the defendant's TCPA violations. Convergent argues that because *Van Patten* involved telemarketing calls, and this case involves collection calls, that somehow the calls caused less harm unto Plaintiff. Essentially, Convergent is seeking TCPA immunity for collection calls.

But Convergent utterly fails to explain how unwanted calls made for collection purposes interfere *less* with Ms. Ma's life than telemarketing calls. In fact, the exact opposite is true: the collection calls, as specifically articulated in the instant Complaint (and conveniently ignored by Convergent) "caused harm to Plaintiff by causing emotional distress from the fear of being sued or otherwise harassed by the constant collection calls." *Id.* ¶ 20. This is particularly true because Convergent calling Ms. Ma for a debt she did not owe. *Id.* ¶ 2. This is in addition to the other harms of invading Ms. Ma's privacy, wasting her time while at work, and occupying the use of her phone. *Id.* ¶¶ 17-18, 22-29. These types of harm have already been recognized in the Central District as sufficient to establish standing:

> "Plaintiff presented evidence that he suffered actual harm because the calls caused stress and embarrassment and interrupted business and personal interactions. Haysbert Decl. ¶¶9-17. Defendant argues that this evidence is in conflict with Plaintiff's earlier statements that he only sought statutory damages. D's Stay Reply 3-4. But the TCPA awards the greater of the "actual monetary loss" or $500 for each improper call, see 47 U.S.C. § 227(b)(3), so the Court does not read a request for the statutory damage amount as an implicit acknowledgement that Plaintiff suffered no actual harm. The Court also notes that Plaintiff has, from the outset, put Defendant on notice that he believes that he was harmed beyond a simple violation of statutory rights. *See, e.g.*, [*13] Compl. ¶14 ("The phone calls to Plaintiff's cellular phone wasted Plaintiff's time, invaded his privacy, caused undue annoyance and stress, and wasted the use of a cellular phone service at Plaintiff's expense.")."

*Haysbert v. Navient Solutions, Inc.*, 2016 U.S. Dist. LEXIS 30720, *12-13, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016). Here, as in *Haysbert*, Plaintiff has established harm "beyond a simple violation of statutory rights." *Id.*

### E. *Romero* Is Flawed And Has Been Rejected in the Central District

For the similar reasons, Convergent's reliance on *Romero v. Dept. Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016, U.S. Dist. LEXIS 110889 at *18 (S.D. Cal. Aug. 5, 2016) is also untenable. First, multiple Central District courts have already rejected *Romero* as "not consistent with *Spokeo*". *Abante Rooter & Plumbing v. Pivotal Payments, Inc.*, 2017 U.S. Dist. LEXIS 26457, *20-21 (N.D. Cal. Feb. 24, 2017) (Chief Magistrate Judge Joseph C. Spero) (agreeing with other courts that have rejected the *Romero* argument that the alleged harm for TCPA violations is "*de minimis*" because there is no such threshold in a standing analysis); *see also Smith v. Blue Shield of Cal. Life & Health Ins. Co.,* 2017 U.S. Dist. LEXIS 5620, *15-19 (C.D. Cal. Jan. 13, 2017) (Honorable Judge Cormac J. Carney) ("[i]n light of the specific purpose and history of the TCPA, the Court agrees with those federal courts that have criticized the *Romero* line of cases,") (criticizing *Romero* as "draconian"  and emphasizing that the TCPA recognizes the concrete injury of *invasion of privacy*) (original emphasis); *see also Messerlian v. Rentokil N. Am., Inc.*, 2016 U.S. Dist. LEXIS 175224, *5-6, 9-10 (C.D. Cal. Dec. 15, 2016) (Honorable Judge George H. Wu) (declining to follow *Romero* and noting plaintiff's harm in the form in invasion of privacy and intrusion into home and business affairs);  *see also Nghiem v. Dick's Sporting Goods, Inc.*, 2016 U.S. Dist. LEXIS 183671, *11 (C.D. Cal. Dec. 1, 2016) (calling *Romero* "hardly convincing" and stating that adopting *Romero* would make it "almost impossible to allege a harm" and that *Romero* "ignores the existence of intangible harms that have been recognized in the legislative history and the case law" and calling *Romero* an "outlier".)

Second, in *Romero*, the court specifically relied on the fact that the plaintiff was being called by "creditors of Plaintiff" who "were attempting to collect a debt" owed by that plaintiff. *Romero*, * 21. Thus, the court apparently determined that because the plaintiff would have been contacted anyways, her harm was not connected to the TCPA violations. *Id*. It follows that the reasoning and facts of *Romero* are distinguished from this case because here, Ms. Ma was harassed for a debt that had nothing to do with her. *Complaint* ¶ 4.

Here, Ms. Ma's harm was caused as result of the "wrong party" TCPA violations. She took great measure to articulate how the pattern of unsolicited collection calls harmed her by causing emotional distress due to fear of legal process, invaded her privacy, wasted her time, interfered with her phone, and disrupted her at work. A federal district court in Florida as recently as March 22, 2017 dissected *Romero* and *Ewing* (decided by the same judge) and explained why the decision (much like Convergent here) downplays the harm inflicted upon the consumer by debt collectors:

> "I respectfully disagree with the *Romero* and *Ewing* decisions. These cases downplay the intangible harms connected with TCPA violations that courts have recognized as concrete injuries, including the appeals court in which the trial court resides. *See Van Patten*, 847 F.3d at 1043. The trial court also gives short shrift to the legislature's ability to advance harms as legally cognizable injuries. *See Spokeo*, 136 S. Ct. at 1549; *see also A.D.*, 2016 WL 4417077, at *7 (noting that the TCPA "directly prohibits a person from taking actions directed at consumers who will be touched by that person's conduct," and that requiring additional allegations of concrete harm was superfluous since Congress had already identified "unsolicited telephonic contact" as an invasion of one's privacy and as a concrete injury). And it "conflates the means through which [a defendant allegedly] violated the TCPA with the harm resulting from that alleged violation." *LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *7 (D.N.M. Oct. 19, 2016) (emphasis in original)

(internal quotation marks omitted). The alleged harm alone is what matters for standing."

*Mohamed v. Off Lease Only*, No. 15-CV-23352-MGC, at *5 (Florida Central Dist., March 22, 2017) (Docket No. 212). Here, as in *Mohamed*, Plaintiff has articulated concrete and particularized injuries that cannot be dismissed simply because the defendant is a debt collector.

### F. Defendant's Motion Should Be Denied Because Defendant's Exact Conduct Constitutes a Rosenthal Act Violation, For Which There is Standing

The California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17, is "designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009).  It provides, in relevant part, that "every debt collector collecting or attempting to collect a consumer debt shall comply" with 15 U.S.C. §§ 1692b-1692j, and "shall be subject to the remedies" of 15 U.S.C. § 1692k. *See* Cal. Civ. Code § 1788.17. "Accordingly, 'any conduct by a debt collector which violates the federal FDCPA necessarily violates the [RFDCPA] as well.'" *Tirabassi v. Chase Home Fin., LLC*, No. CV 14-08790 BRO SSX, 2015 U.S. Dist. LEXIS 43730, 2015 WL 1402016, at *7 (C.D. Cal. Mar. 24, 2015) (*quoting Robinson*, 654 F. Supp. 2d at 1060).

In *Haysbert*, Judge Gutierrez specially considered whether defendant's repeated calls evidenced a potential Rosenthal violation for "causing a telephone to ring repeatedly or continuously to annoy the person called". *Haysbert v. Navient Solutions, Inc.*, 2016 U.S. Dist. LEXIS 30720, *36, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016).  The court explained that:

> "Courts often consider the volume and pattern of calls made to the debtor. Courts have also considered whether the defendant actually reached the plaintiff, and whether defendant was asked

to stop calling. Whether a particular volume or pattern leads to liability, however, is not a straightforward question, and courts have been inconsistent in applying the standards." *Haysbert*, at *37 (internal citations and quotations omitted).

The court went on to explain that "Defendant called Plaintiff ninety-nine times over a one-and-a-half year period, and Plaintiff presents evidence that he frequently received between two and five calls a day. Plaintiff also presents evidence that these calls caused interruptions in his day and that he answered at least some of these calls. The Court thus believes that, at a minimum, there is a triable issue of fact as to whether Defendant's conduct was harassing." *Haysbert*, *37-38 (internal citations omitted).

Here, Ms. Ma was called over 74 times over the course of September to November of 2015, which is a *significantly* higher frequency than *Haysbert*. *Complaint*, ¶¶ 22-28.   Logic dictates that if there is standing under the Rosenthal Act for the exact same conduct that violates the TCPA, that Ms. Ma has far exceeded the requirement for standing.

## V.   CONCLUSION

Ms. Ma respectfully requests the Court deny Convergent's motion. Although Ms. Ma strongly believes there is no question as to her standing, in the alternative, she requests leave to amend her Complaint.


March 23, 2017                    **LAW OFFICES OF SCOTT WARMUTH**

                                 By      */s/Nathaniel Clark*
                                         Nathaniel Clark, Esq.
                                         *ATTORNEYS FOR PLAINTIFF MEI MA*